UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FILED
APR 16 2025
U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>WEN CHEN,<br>PING OUYANG,<br>MOHAMMAD SAIFUL ISLAM,<br>MD SHAKIR HOSSAIN,<br>and<br>KHALED AHMED,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. S1 4:24-cr-00596-RWS-SRW |

**FIRST SUPERSEDING INDICTMENT**

The Grand Jury charges that, at times relevant to this Superseding Indictment:

**OVERVIEW**

1. The defendants, **WEN CHEN**, **PING OUYANG**, **MOHAMMAD SAIFUL ISLAM**, **MD SHAKIR HOSSAIN**, and **KHALED AHMED**, conspired—that is, they agreed with one another and others—to carry out a fraud scheme that targeted elderly victims, specifically a fraud scheme designed to trick the elderly victims into handing over large sums of cash to the defendants and their co-conspirators.

**COUNT ONE**
**(Conspiracy to Commit Wire Fraud: 18 U.S.C. § 1349)**

**The Conspiracy**

2. Beginning at an exact time unknown, but including between at least in or around July 2024 and in or around October 2024, within the Eastern District of Missouri and elsewhere, the defendants,

**WEN CHEN,**
**PING OUYANG,**

**MOHAMMAD SAIFUL ISLAM,**
**MD SHAKIR HOSSAIN**, and
**KHALED AHMED,**

voluntarily and intentionally combined, conspired, confederated, and agreed with one another and others, known and unknown to the Grand Jury, to commit wire fraud; that is, they agreed to devise and participate in a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses and representations, and, for the purpose of executing the scheme and artifice and attempting to do so, knowingly caused and attempted to cause to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals in the form of interstate electronic communications, all in violation of Title 18, United States Code, Section 1349.

## The Object of the Conspiracy

3. The object of the conspiracy was to obtain money fraudulently from elderly victims in numerous states, including elderly victims who resided within the Eastern District of Missouri.

## The Manner and Means of the Conspiracy

It was part of the conspiracy to commit wire fraud that:

4. Conspirators initiated contact with elderly victims through various means, including through phone calls and fraudulent electronic messages, such as "pop-up" messages and emails, that the elderly victims received on their computers and other electronic devices.

5. The fraudulent electronic messages typically contained a phone number, along with false instructions designed to lure the elderly victims into calling the phone number to resolve completely fictitious issues that did not actually exist—issues such as that the elderly victims' financial accounts had been charged inadvertently, or that the elderly victims' computers needed antivirus software, or that the elderly victims' personal information had been compromised, among

other things.

6. After conspirators called the elderly victims or lured the elderly victims into calling them, they used false names and falsely portrayed themselves as being affiliated with a legitimate entity, such as a private company or a law enforcement agency, and oftentimes convinced the elderly victims to provide them with remote access to the elderly victims' computers, which on some occasions included access to the elderly victims' online banking information.

7. Once conspirators had remote access to the elderly victims' computers, or had otherwise made contact with the elderly victims, they misled the elderly victims into believing that they owed money to the conspirators.

8. For instance, on many occasions, conspirators falsely represented to the elderly victims that the elderly victims' financial accounts accidentally had been refunded too much money and that the elderly victims needed to withdraw cash from their financial accounts to repay the money. In addition, on at least one occasion, conspirators falsely represented to an elderly victim that her identity had been compromised and that she needed to pay cash as part of a law enforcement sting operation.

9. Because the elderly victims believed that they were dealing with actual representatives of legitimate entities and were unaware that they were being defrauded, the elderly victims complied with the conspirators' instructions by obtaining cash.

10. Upon being informed by the elderly victims that they had obtained the cash, conspirators arranged for the elderly victims' cash to be picked up couriers who worked on behalf of the conspiracy, either at the elderly victims' homes or at neutral locations, such as parking lots of gas stations and retail stores.

11. To coordinate these fraudulent cash pick-ups, conspirators used encrypted

messaging apps, such as WhatsApp and WeChat, to provide the couriers with instructions regarding the details of the cash pick-ups.

**The Defendants' Roles in the Conspiracy**

12. Defendant **WEN CHEN**, Defendant **PING OUYANG**, Defendant **MD SHAKIR HOSSAIN**, and Defendant **KHALED AHMED** each worked as couriers on behalf of the conspiracy, in that they took trips for the purpose of making fraudulent cash pick-ups from elderly victims in various states, including multiple cash pick-ups that Defendant **KHALED AHMED** made from elderly victims within the Eastern District of Missouri between on or about September 20, 2024 and on or about October 19, 2024.

13. Defendant **MOHAMMAD SAIFUL ISLAM** worked as a handler on behalf of the conspiracy, in that he provided instructions to couriers, including Defendant **KHALED AHMED**, as to when to meet the elderly victims, where to meet the elderly victims, and how much cash to pick up from the elderly victims.

14. When Defendant **MOHAMMAD SAIFUL ISLAM** provided Defendant **KHALED AHMED** with instructions regarding the fraudulent cash pick-ups, Defendant **MOHAMMAD SAIFUL ISLAM** typically supplied Defendant **KHALED AHMED** with a false name to use during the cash pick-ups, and sometimes supplied Defendant **KHALED AHMED** with the elderly victim's name, a description of the elderly victim's car, and a description of the elderly victim's clothing.

15. Defendant **MOHAMMAD SAIFUL ISLAM** also typically required Defendant **KHALED AHMED** to send Defendant **MOHAMMAD SAIFUL ISLAM** a photo of the serial number contained on the front of a dollar bill, which serial number conspirators subsequently gave to the elderly victims to use as a "token" to verify their identities when they met with Defendant

**KHALED AHMED** for the fraudulent cash pick-ups.

**<u>Acts in Furtherance of the Conspiracy</u>**

16. On numerous occasions, including on or about October 19, 2024, Defendant **MOHAMMAD SAIFUL ISLAM** instructed Defendant **KHALED AHMED** to make a fraudulent cash pick-up in the Eastern District of Missouri from an elderly victim, who on that specific occasion conspirators had deceived into believing that she needed to repay money that inadvertently had been deposited into her financial account.

17. After initially providing Defendant **KHALED AHMED** with the elderly victim's home address, Defendant **MOHAMMAD SAIFUL ISLAM** subsequently instructed Defendant **KHALED AHMED** to meet the elderly victim at a nearby gas station and to use the false name "Adam" during the meeting. Defendant **MOHAMMAD SAIFUL ISLAM** further provided Defendant **KHALED AHMED** with, among other information, the elderly victim's sex and first name, the color of the elderly victim's sweater, and the color and make of the elderly victim's vehicle.

18. Once Defendant **KHALED AHMED** made the fraudulent cash pick-up, Defendant **KHALED AHMED** sent Defendant **MOHAMMAD SAIFUL ISLAM** a photo of the package that Defendant **KHALED AHMED** had picked up from the elderly victim. Defendant **MOHAMMAD SAIFUL ISLAM** then informed Defendant **KHALED AHMED** that the package was supposed to contain $25,000. In response, Defendant **KHALED AHMED** confirmed with Defendant **MOHAMMAD SAIFUL ISLAM** that Defendant **KHALED AHMED** had counted three times, but the package contained only $24,800.

19. Upon receiving that confirmation, Defendant **MOHAMMAD SAIFUL ISLAM** requested that Defendant **KHALED AHMED** deliver that money, as well as additional money

that Defendant **KHALED AHMED** had obtained during other recent fraudulent cash pick-ups from elderly victims, to Chicago, just as Defendant **KHALED AHMED** had done in the past.

20. Five days later, on or about October 24, 2024, Defendant **MOHAMMAD SAIFUL ISLAM** and Defendant **MD SHAKIR HOSSAIN** flew from the state of New York to the state of Illinois.

21. Once Defendant **MOHAMMAD SAIFUL ISLAM** and Defendant **MD SHAKIR HOSSAIN** arrived in the state of Illinois, Defendant **MOHAMMAD SAIFUL ISLAM** rented a vehicle and then drove Defendant **MD SHAKIR HOSSAIN** to the state of Wisconsin to attempt to make a fraudulent cash pick-up from an elderly victim who conspirators had deceived into believing that he needed to repay $20,000 cash that inadvertently had been deposited into his financial account.

22. When **MOHAMMAD SAIFUL ISLAM** and Defendant **MD SHAKIR HOSSAIN** arrived together to make the fraudulent cash pick-up at the elderly victim's home, they were intercepted by law enforcement.

23. Two days after that, on or about October 26, 2024, an unindicted co-conspirator, to whom Defendant **KHALED AHMED** previously had been introduced by Defendant **MOHAMMAD SAIFUL ISLAM**, requested that Defendant **KHALED AHMED** make a fraudulent cash pick-up in the state of Kentucky from an elderly victim who conspirators had deceived into believing that she needed to pay $20,000 cash as part of a sting operation aimed at apprehending individuals who had supposedly compromised her identity.

24. Later that same day, after Defendant **KHALED AHMED** informed the unindicted co-conspirator that Defendant **KHALED AHMED** was unable to make that fraudulent cash pick-up, Defendant **WEN CHEN** and Defendant **PING OUYANG**—who had traveled to the state of

Kentucky from the state of Texas—arrived together to make the fraudulent cash pick-up at the elderly victim's home, where they were intercepted by law enforcement.

25. As part of the conspiracy, Defendant **WEN CHEN**, Defendant **PING OUYANG**, Defendant **MOHAMMAD SAIFUL ISLAM**, Defendant **MD SHAKIR HOSSAIN**, and Defendant **KHALED AHMED** caused, and attempted to cause, the transmission of interstate wire communications in furtherance of, or in an attempt to carry out, some essential step in the wire fraud scheme, including the transmission of messages and instructions regarding the execution of the conspiracy using the WhatsApp and WeChat messaging systems.

26. Using the manner and means described above, conspirators, including Defendant **WEN CHEN**, Defendant **PING OUYANG**, Defendant **MOHAMMAD SAIFUL ISLAM**, Defendant **MD SHAKIR HOSSAIN**, and Defendant **KHALED AHMED** defrauded, and attempted to defraud, elderly victims in at least six states of more than $300,000, including on at least the following occasions:

| Approx. Date | City, State | Victim | Victim Age | Conspirators Involved In Fraudulent Cash Pick-Up | Approx. Amount |
|---|---|---|---|---|---|
| 08/26/24 | Raytown, MO | S.A. | 75 | Khaled Ahmed<br>Mohammad Saiful Islam | $14,500 |
| 09/04/24 | Waverly, IA | S.N. | 85 | Khaled Ahmed<br>Mohammad Saiful Islam | $34,400 |
| 09/11/24 | Olney, IL | C.H. | 81 | Khaled Ahmed<br>Mohammad Saiful Islam | $14,500 |
| 09/12/24 | Bethalto, IL | M.R. | 78 | Khaled Ahmed<br>Mohammad Saiful Islam | $9,850 |
| 09/20/24 | Cape Girardeau, MO | S.T. | 77 | Khaled Ahmed<br>Mohammad Saiful Islam | $19,800 |
| 09/23/24 | Bellefontaine Neighbors, MO | R.A. | 74 | Khaled Ahmed<br>Mohammad Saiful Islam | $12,500 |
| 09/26/24 | Moberly, MO | F.J. | 71 | Khaled Ahmed<br>Mohammad Saiful Islam | $28,000 |
| 10/02/24 | St. Charles, MO | J.W. | 59 | Khaled Ahmed<br>Mohammad Saiful Islam | $30,000 |

| | | | | | |
|---|---|---|---|---|---|
| 10/07/24 | Jefferson City, MO | M.P. | 72 | Khaled Ahmed<br>Mohammad Saiful Islam | $11,750 |
| 10/08/24 | Champaign, IL | D.A. | 78 | Khaled Ahmed<br>Mohammad Saiful Islam | $20,000 |
| 10/12/24 | St. Charles, MO | B.H. | 73 | Khaled Ahmed<br>Mohammad Saiful Islam | $24,000 |
| 10/18/24 | Petersburg, IN | B.B. | 77 | Khaled Ahmed<br>Mohammad Saiful Islam | $25,000 |
| 10/19/24 | Webster Groves, MO | B.B. | 85 | Khaled Ahmed<br>Mohammad Saiful Islam | $24,800 |
| 10/21/24 | Princeton, IL | L.W. | 73 | Khaled Ahmed<br>Mohammad Saiful Islam | $29,600 |
| 10/24/24 | Onalaska, WI | J.N. | 76 | MD Shakir Hossain<br>Mohammad Saiful Islam | $20,000 |
| 10/26/24 | Bedford, KY | C.R. | 70 | Wen Chen<br>Ping Ouyang | $20,000 |
| | | | | **TOTAL** | **$338,700** |

## FORFEITURE ALLEGATION

The Grand Jury further alleges there is probable cause that:

1. Pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461, upon conviction of a conspiracy to violate Title 18, United States Code, Section 1343, as set forth in Count One, the defendants shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to such violation(s).

2. Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, which constitutes or is derived from proceeds traceable to such violation(s).

3. Specific property subject to forfeiture includes, but is not limited to, $13,200 in United States currency.

4. If any of the property described above, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

________________________
FOREPERSON

SAYLER A. FLEMING
United States Attorney

________________________
JUSTIN M. LADENDORF #68558MO
Assistant United States Attorney